# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AZIMJON AKHMADJANOV, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> LEONARD ODDO, in his official capacity ) <br> as Warden of Moshannon Valley Processing ) <br> Center, *et al.*, ) <br> ) <br> Respondents. ) | Civil Action No. 3:25-35 <br> Judge Stephanie L. Haines |

## MEMORANDUM OPINION

On February 5, 2025, Petitioner, Azimjon Akhmadjanov, filed a Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1). That same day, Petitioner filed a Motion for Order to Show Cause and Preliminary Injunction and Temporary Restraining Order (the "TRO Motion") (ECF No. 2), along with a Brief in Support (ECF No. 3). Presently before the Court is Petitioner's Petition and his accompanying TRO Motion.

Petitioner is a native of Uzbekistan, who has been detained in the custody of the United States Immigration and Customs Enforcement ("ICE") since September 17, 2023. (ECF No. 3 at 6). With the Petition, Petitioner seeks this Court to (i) "[a]ssume jurisdiction over this matter;" (ii) [d]eclare that Petitioner's continued detention violates the Due Process clause of the Fifth Amendment of the U.S. Constitution;" (iii) "[i]ssue a writ of habeas corpus ordering that Petitioner be provided with an individualized and recorded custody hearing before an impartial adjudicator within 14 days[;]" and (iv) "[g]rant such relief as the Court deems just and proper." (ECF No. 1 at 23–24).

With the TRO Motion, Petitioner seeks (i) "a temporary restraining order or preliminary

injunction requiring Respondents to release Petitioner and enjoining them continuing to detain Petitioner during the pendency of this petition;" (ii) the Court to "[o]rder Petitioner released from Respondents' custody pursuant to the Court's inherent authority as described in *Lucas v. Hadden*;" (iii) the Court to "[o]rder Respondents to show cause why Petitioner's Petition should not be expeditiously granted;" and/or (iv) the Court to "[g]rant Petitioner such other, further and additional relief as the Court deems just and appropriate." (ECF No. 3 at 15).

On February 14, 2025, the Government filed its Response in Opposition to the TRO Motion on behalf of the Respondents—Brian McShane, Acting Field Director of ICE Enforcement and Removal Operations ("ERO") of the Philadelphia Field Office, Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), and Pamela Bondi, Attorney General of the United States. (ECF No. 9).[1]  On February 18, 2025, Petitioner filed his Reply in Support of the TRO Motion. (ECF No. 10).

For the following reasons, the Court will **GRANT IN PART** Petitioner's Petition and **DENY** Petitioner's TRO Motion. Although this Court will not order Petitioner's immediate release, it will direct that he be provided a prompt bond hearing.

### I. Factual Background

Petitioner was born in Namangan, Uzbekistan on October 21, 1996. (ECF No. 9-1 at 5). He entered the United States without permission through San Ysidro, California, on May 2, 2023. (*Id.* at 6). On the same date that he entered the United States, Petitioner received a Notice to Appear and was released on an Order of Recognizance. (*Id.* at 6–7). The Notice and Order directed

---

[1] In its Response, the Government stated the following: "The undersigned does not represent Leonard Oddo, Warden of Moshannon Valley Processing Center, as Moshannon [Valley] is a private facility and Warden Oddo is not a federal employee. However, all arguments made on behalf of the remaining Respondents apply with equal force to Warden Oddo, as he is detaining the Petitioner at the request of the United States." (ECF No. 9 at 1 n.1).

Petitioner to appear at a Brooklyn, New York address, but Petitioner failed to appear. (*Id.* at 7). Subsequently, Petitioner moved to a Pittsburgh, Pennsylvania address. (*Id.* at 6). In violation of the Order, however, Petitioner did not report his change of address. (*Id.* at 7).

On September 18, 2023, DHS issued a Notice to Appear for removal proceedings (set for October 11, 2023), which charged Petitioner as being an "arriving alien" subject to removal from the United States under Section 212(a)(7)(A)(i) of the Immigration and Nationality Act (the "INA") because he is an "immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [INA]" and/or "an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality." (ECF No. 9-2 at 2). On September 27, 2023, ERO Pittsburgh Field Operations arrested Petitioner and subsequently transported him to Moshannon Valley Processing Center ("Moshannon Valley") in Philipsburg, Pennsylvania. (ECF No. 9-1 at 6).

On December 14, 2023, Petitioner appeared before an Immigration Judge ("IJ"). (ECF No. 9-3). Petitioner, through his then-counsel, admitted to the allegations in the Notice and conceded the charges listed therein. (ECF No. 9-3 at 4:19–20). The IJ then sustained removability under Section 212(a)(7)(A)(i) of the INA and designated Uzbekistan as the country of removal. (*Id.* at 5:3–7). Petitioner's then-counsel indicated that Petitioner would be applying for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* at 6:11–12).

On March 29, 2024, Petitioner filed a pro se Form I-589 (Application for Asylum and Withholding of Removal), claiming past persecution and fear of future persecution by the police in Uzbekistan on account of Petitioner's religion and political opinion. (ECF No. 1-4). On August 5, 2024, despite finding Petitioner removable, the IJ granted Petitioner asylum. (*Id.* at 3). DHS

3

timely appealed the IJ's decision to the Board of Immigration Appeals (the "BIA"), arguing that the IJ erred in finding Petitioner credible.  (ECF No. 9-5).

Thereafter, ERO underwent a review of Petitioner's custody pursuant to ICE Directive 16004.1.  (ECF No. 1-6).  On November 18, 2024, ICE issued its decision following the review, determining that "[e]xceptional circumstances and/or legal requirement to detain exists warranting this decision to maintain [Petitioner] in ICE custody pending the outcome of the DHS appeal before the BIA.  Should the BIA dismiss the appeal, ICE will re-evaluate [Petitioner's] custody status at that time."  (*Id.* at 1).

On January 30, 2025, the BIA remanded Petitioner's asylum case to the IJ "for further proceedings, as [the IJ] deems necessary under the circumstances, and the issuance of a new decision including additional findings of fact regarding [Petitioner's] credibility."  (ECF No. 1-5 at 5).  Petitioner's remanded case was set for a hearing before the IJ on February 20, 2025.[2]  (ECF No. 9-6).

**II. Jurisdiction**

Title 28, United States Code, Section 2241 grants federal courts the authority to hear habeas corpus matters by noncitizens challenging the lawfulness of their detention by ICE.  *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018).

**III. Analysis**

**A. Petitioner Is Entitled to an Individualized Bond Hearing**

Title 8, United States Code, Section 1225(b) governs the detention of "aliens arriving in the United States," and mandates the detention of "arriving aliens" who, like Petitioner, do not possess valid entry or travel documents when they arrive.  Section 1225(b) provides that arriving

---

[2] The Court is not aware of whether this hearing took place nor of any decision that may have been made if such hearing was held.

4

aliens are inspected immediately upon arrival in the United States by an officer of the United States Customs and Border Protection. "If an immigration officer determines that an alien … who is arriving in the United States … is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of [the INA], the officer shall order the alien removed from the United States without further hearing or review *unless the alien indicates either an intention to apply for asylum ... or a fear of persecution.*" *Id.* § 1225(b)(1)(A)(i) (emphasis added).

"If the officer determines at the time of the interview that an alien has a credible fear of persecution …, the alien shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii). Statutorily, "[t]he plain meaning of th[at] phrase[] is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum." *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Indeed, in *Jennings*, the Supreme Court determined that Section 1225(b) "mandate[s] detention until a certain point and authorize[s] release prior to that point only under limited circumstances." *Id.* at 301.[3] As a result, the Court held that Section 1225(b) cannot "reasonably be read to limit detention to six months." *Id.*; *cf. Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001) (construing 8 U.S.C. § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal" and holding that six months is a presumptively reasonable period).

Thus, based upon the Supreme Court's holding in *Jennings*, this Court must conclude that Petitioner's detention under 8 U.S.C. § 1225(b) does not *statutorily* entitle him to a bond hearing pending his asylum proceedings. However, in *Jennings*, the Supreme Court did not examine

---

[3] "With a few exceptions not relevant here, the Attorney General may 'for urgent humanitarian reasons or significant public benefit' temporarily parole aliens detained under §§ 1225(b)(1) and (b)(2). 8 U.S.C. § 1182(d)(5)(A). That express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released." *Jennings*, 583 U.S. at 300.

5

whether the Constitution requires that an arriving alien seeking admission to the United States who is subject to mandatory detention under 8 U.S.C. § 1225(b) must be afforded a bond hearing if detention lasts more than six months. *See Jennings*, 583 U.S. at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under [§ 1225(b)], it had no occasion to consider respondents' constitutional arguments on their merits.").

In *Pierre v. Doll*, the United States District Court for the Middle District of Pennsylvania wrote the following:

> [T]he Supreme Court in *Jennings* did not determine whether arriving aliens facing prolonged detention are entitled to bond hearings as a matter of constitutional Due Process. *See Jennings*, [583 U.S. at 312]; *see also Otis V. v. Green*, 2018 WL 3302997, *6 (D.N.J. July 5, 2018) ("Although *Jennings* abrogated the holdings of this and other courts finding an implicit reasonable time limitation on § 1225(b) detention, *Jennings* did not address ... [whether] those detained under the statute, as applicants for admission, possess some rights under the Due Process Clause which may be impugned should detention under the statute become unduly and unreasonably prolonged."). Indeed, neither the Supreme Court nor the Third Circuit has addressed whether due process requires a detainee, being held pursuant to § 1225(b), to receive a bond hearing following a certain period of detention, and this Constitutional issue remains expressly undecided.

*Pierre v. Doll*, 350 F. Supp. 3d 327, 331 (M.D. Pa. 2018). In *Pierre*, the court held that "arriving aliens detained pre-removal pursuant to § 1225(b) have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable." *Id.* at 332 (quoting *Singh v. Sabol*, No. 1:16-CV-02246, 2017 WL 1659029, at *4 (M.D. Pa. Apr. 6, 2017), *report and recommendation adopted*, No. 1:16-CV-2246, 2017 WL 1541847 (M.D. Pa. Apr. 28, 2017)).

Recently, this Court also held "that an arriving alien such as Petitioner has a constitutional due process right to a bond hearing once his detention becomes unreasonable to the same extent as an alien who is subject to removal under § 1226(c)." *A.L. v. Oddo*, No. 3:24-CV-302, 2025 WL 352471, at *2 (W.D. Pa. Jan. 6, 2025); *see also Pierre*, 350 F. Supp. 3d at 332 (collecting cases

6

that determined "arriving aliens detained under § 1225(b) have a due process right to avoid unreasonably prolonged detention"). Further, in *A.L.*, this Court determined that "[i]n assessing whether detention has become unreasonable, this Court … appl[ies] the same factors laid out in *German Santos* [*v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210 (3d Cir. 2020)]." *A.L.*, 2025 WL 352471, at *3. The *German Santos* factors are as follows: (i) the duration of detention; (ii) whether the detention is likely to continue; (iii) reasons for the delay, such as a detainee's request for continuance; and (iv) whether the detainee's conditions of confinement are "meaningfully different from criminal punishment." *German Santos*, 965 F.3d at 210–11; *see id.* at 211 ("The most important factor is the duration of detention."). An analysis of these factors weighs in favor of granting Petitioner an individualized bond hearing.

First, regarding the duration of detention, Petitioner has been held in custody without a bond hearing for over seventeen months since September 17, 2023. (*See* ECF No. 3 at 6). In the context of § 1225(c), this delay falls within the threshold where courts have recognized delays as unreasonable. *See German Santos*, 965 F.3d at 211; *Rivas v. Oddo*, No. 3:22-CV-223, 2023 WL 4361140, at *2 (W.D. Pa. June 27, 2023) (finding fourteen months without a bond hearing unreasonable); *Kleinauskaite v. Doll*, No. 4:17-CV-02176, 2019 WL 3302236, at *6 (M.D. Pa. July 23, 2019) ("[T]his Court finds the twelve-month milestone appropriate in this case for determining when [Petitioner's] detention escaped the realm of reason."); *see also Davydov v. Doll*, No. 1:19-CV-2110, 2020 WL 969618, at *4 (M.D. Pa. Feb. 28, 2020) (collecting cases). It follows that, here, in the context of § 1225(b), the Court finds that Petitioner's duration of detention has become unreasonable, and thus the first factor weighs in favor of Petitioner.

Second, regarding the likelihood of continued detention, the Court finds that Petitioner's detention is likely to persist while the Government contests the IJ's grant of asylum. The issue of

7

asylum is currently on remand from the BIA, and the process could extend for several months, as either party may appeal the IJ's subsequent ruling once again to the BIA and, ultimately, the Court of Appeals.  *See Elyardo v. Lechleitner*, No. 1:23-CV-01089, 2023 WL 8259252, at *3 (M.D. Pa. Nov. 29, 2023) ("The likelihood of continued detention also weighs in favor of habeas corpus relief.  [Petitioner's] underlying immigration case has been remanded by the BIA for further proceedings by an immigration judge ….  Given that the case is not scheduled for a hearing for approximately two months and that [Petitioner] could appeal the immigration judge's decision to the BIA and any subsequent unfavorable decision by the BIA to a United States Court of Appeals, it appears that [Petitioner's] detention could continue for many more months.").  Therefore, the Court finds that the second factor weighs in favor of Petitioner.

Third, regarding the reasons for the delay, this factor does not cut one way or the other.  Respondents have a right to appeal the IJ's granting of asylum.  Also, Respondents state that "ICE Directive 16004.1 favors [the] release of noncitizens when ICE appeals an IJ's decision granting asylum[] … but only when there are no 'exceptional concerns such as national security issues or danger to the community and [] any requirement under law to detain.'"  (ECF No. 9 at 4 n.2 (quoting ECF No. 1-7)).  Although Respondents do not articulate why the exception to Directive 16004.1 is met in Petitioner's case, ICE's letter of review of Petitioner at ECF No. 1-6 indicates that the exception has been met.  Nonetheless, the record clearly reflects that Petitioner has not caused any delay on his behalf.  Accordingly, this factor does not favor either side.  *See German Santos*, 965 F.3d at 212 (granting a bond hearing even though the reason-for-delay factor "d[id] not cut one way or the other").

Lastly, regarding whether the detainee's conditions of confinement are meaningfully different from criminal punishment, the Court finds that this factor slightly weighs in favor of

Petitioner.  Respondents are correct that Moshannon Valley "only houses individuals detained for immigration purposes[]" and that "[Petitioner] is not in a prison serving a criminal punishment." However, it cannot be said that Petitioner's conditions of confinement are *meaningfully* different from the confinement of criminal punishment.  For example, this Court has implied that Moshannon Valley is "penal in character." *Rivas*, 2023 WL 4361140, at *1; *id.* at *2 ("The Court has no basis for doubting Magistrate Judge Pesto's supposition that 'the physical facility at Moshannon Valley' housing Petitioner 'is unlikely to have changed much since it expressly was a criminal detention center[.]'").  Further, Petitioner avers that he has been subjected to carceral conditions, such as solitary confinement, and an inability to receive adequate medical care.  (ECF No. 1 ¶ 46).  Accordingly, this factor weighs in favor of Petitioner.

In sum, three factors—the duration of detention, the likelihood of continued detention, and the detainee's conditions of confinement—weigh in favor of Petitioner, and one factor—the reasons for the delay—is neutral.  For those reasons, the Court will grant in part Petitioner's Petition, directing that he be provided a prompt bond hearing.  Any other relief requested by Petitioner in his Petition, such as immediate release and costs and attorneys' fees, is denied.

### B.  Petitioner Is Not Entitled to Preliminary Injunctive Relief

Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances."  *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  A party seeking to obtain such relief—whether through a TRO or a preliminary injunction—must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief."  *Id.*

Failure to satisfy the first factor of the analysis—a likelihood of success on the merits—

9

necessitates denial of the injunctive request. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)).  Thus, district courts need not address the other factors if the moving party fails to establish the first. *See Marvin R.V. v. Tsoukaris*, No. 20-CV-5225, 2020 WL 6689760, at *5 n.2 (D.N.J. Nov. 13, 2020) (collecting Third Circuit cases to support the statement that "[because the p]etitioner has failed to meet his burden with respect to the likelihood of success on the merits, the Court need not address the remaining factors"); *see also Peter v. Att'y Gen. of New Jersey*, No. 23-CV-3337, 2023 WL 4627866, at *1 (D.N.J. July 19, 2023).

Here, Petitioner has failed to establish the likelihood of success on the merits of his claims. With his TRO Motion, Petitioner seeks immediate release.  (*See* ECF No. 3 at 15).  However, Petitioner's argument regarding the likelihood-of-success-on-the-merits factor is that he "has a reasonable likelihood of success in demonstrating that his sixteen-month long confinement[] … without an individualized bond hearing is unconstitutionally prolonged." (*Id.* at 5).  Because the Court is granting Petitioner an individualized bond hearing, Petitioner's argument regarding this factor is now moot.  Accordingly, Petitioner's argument cannot establish the likelihood of success on the merits of his claims.  Therefore, the Court denies Petitioner's TRO Motion.

### C. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus at ECF No. 1.  Respondents are ordered to arrange an individualized bond hearing for Petitioner before an appropriate immigration court within fourteen days of the date of this order.  Any other relief requested by Petitioner in his Petition, such as immediate release and costs and attorneys' fees, is **DENIED**.

Furthermore, for the foregoing reasons, the Court **DENIES** Petitioner's Motion for Order

to Show Cause and Preliminary Injunction and Temporary Restraining Order at ECF No. 2.

    An appropriate Order follows.


DATE:  February 28, 2025

                                        /s/ *Stephanie L. Haines*
                                        **STEPHANIE L. HAINES**
                                        **UNITED STATES DISTRICT JUDGE**